# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JALIL S. REED, | : | Civil No. 1:22-CV-01832 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LT. GARCIA, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is a motion to dismiss the amended complaint for failing to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and a brief in support filed by twenty-three of the twenty-four defendants named in this action.  (Docs. 35, 52.) Also pending are Plaintiff's motion for a default judgment, motion to appoint counsel, and requests for discovery.  (Docs. 68, 69, 75, 80, 81.)  In response, Defendants have filed a motion to stay discovery pending the resolution of the motion to dismiss.  (Doc. 84.)  For the reasons discussed below, the court will grant Defendants' motion in part and deny it in part.  The court will dismiss all the claims except the Eight Amendment cruel and unusual punishment claims that went unchallenged in Defendants' motion.  The court will also deny Plaintiff's motions and his request for discovery.  Since this order disposes of the pending motion to dismiss, Defendants' motion for a stay of discovery will be denied as moot.

## PROCEDURAL HISTORY AND BACKGROUND

Plaintiff initiated this action in November of 2022 by filing a complaint raising multiple constitutional claims under 42 U.S.C. § 1983 against four defendants: (1) Garcia, a lieutenant at SCI-Dallas ("Garcia"); (2) M. Conrad, a lieutenant at SCI-Dallas; (3) Harrison, a corrections officer ("C.O.") at SCI-Dallas; and (4) E. Sherrill, a C.O. at SCI-Dallas.  (Doc. 1, pp. 2–3.)[1]  The complaint alleges that the events giving rise to the complaint occurred on September 22, 2022, September 23, 2022, September 29, 2022, and October 22, 2022.  (*Id.*, p. 4.) Plaintiff's statement of facts in support of his complaint read as follows:

> I was sexually harassed by Lt. Garcia at SCI-Dallas. I was threatened and told I would be harmed by CO E. Sherrill. I was retaliated by CO Harrison due to me filing a PREA.[2]  I was told by Lt. M Conrad to make my PREA go away he was attempting to bribe and intimidate me.

(*Id.*)  Based on this sparse statement of facts, Plaintiff brought fourteen claims under both the United States Constitution and state law.  (*Id.*, p. 5.)  Plaintiff also sought leave to proceed *in forma pauperis*.  (Doc. 2.)

On September 29, 2022, the court entered an order granting Plaintiff's motion to proceed *in forma pauperis* and dismissing the complaint pursuant to 28

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[2] The court presumes that Plaintiff's discussion of PREA is a reference to the Prison Rape Elimination Act.

U.S.C. § 1915(e)(2)(B)(ii).  (Doc. 9.)  The court granted leave for Plaintiff to timely file an amended complaint.  (*Id.*)

The court received Plaintiff's amended complaint on December 12, 2023. (Doc. 16.)  The amended complaint names twenty-four defendants and brings Constitutional claims and state law claims stemming from multiple unrelated events that occurred at SCI-Dallas.  In addition to the four defendants named in the original compliant, the amended complaint raises claims against the following: (1) Shistle, a C.O. at SCI-Dallas; (2) Klapat[3], a C.O. at SCI-Dallas; (3) Adamson[4], a C.O. at SCI-Dallas; (4) Benscoter[5], a C.O. at SCI-Dallas; (5) Dileo, at C.O. at SCI-Dallas; (6) Letinski[6], a C.O. at SCI-Dallas; (7) Zagata, a C.O. at SCI-Dallas; (8) Sopata, a C.O. at SCI-Dallas; (9) Havard, a C.O. at SCI-Dallas; (10) Stark, a C.O. at SCI-Dallas; (11) Simpson, a C.O. at SCI-Dallas; (12) Guzenski, a lieutenant at SCI-Dallas; (13) Gavlick, a lieutenant at SCI-Dallas; (14) Deputy Warden

---

[3] Plaintiff identifies Defendant Klapat as "Klapt," but Defendants correct this in their brief in support.  (Doc. 52, p. 8.)

[4] Plaintiff identifies Defendant Adamson as "Adaminson," but Defendants correct this in their brief in support.  (Doc. 52, p. 8.)

[5] Plaintiff identifies Defendant Benscoter as "Scoot," but Defendants correct this in their brief in support.  (Doc. 52, p. 8.)

[6] Plaintiff identifies Defendant Letinski as "Litsenski," but Defendants correct this in their brief in support.  (Doc. 52, p. 9.)

Bohinski ("Bohinski"); (15) Deputy Warden Contreras[7] ("Contreras"); (16) Major Goyne ("Goyne"); (17) Counselor Mangan ("Mangan"); (18) Classification Committee Program Manager Inniss ("Inniss"); (19) P.S.S. Austin ("Austin"); (20) Unit Manger Growhowski ("Growhowski").  (*Id.*, pp. 1–2.)

The amended complaint begins by alleging that on September 22, 2022, Defendant Garcia repeatedly told Plaintiff and his cellmate to "suck his dick." (Doc. 16, p. 5.)  Plaintiff alleges that he informed the medical department, and the administration, which included, Defendants Bohinski, Contreras, and Goyne, and non-parties Superintendent Ransom, Nicole Hogan, and an unidentified "Major." (*Id.*)

Plaintiff alleges that on September 23, 2022, Defendant Conrad attempted to bribe and intimidate him by telling him to "make this go away" and slid him a PREA statement through this tray-pass and instructing Plaintiff "to put that someone else wrote the PREA and I didn't."  (*Id.*)  Plaintiff further alleges that he refused and reported this "to the same people and told them that I was already being punished by not being allowed to shower, go to yard and given cold finger food and that I fear that the retaliation will only progress."  (*Id.*)

---

[7] Defendant identifies Defendant Contreras as "Contreas," but Defendants use Contreras in their brief in support.  (Doc. 52, p. 6.)

Plaintiff then alleges that on September 29, 2022, Defendant Harrison told Plaintiff "I'm just gonna rewrite it, I've talked to Charlie and that it was gonna be DWOP[8]."  (*Id*., p. 6.)  Plaintiff allegedly told Defendant Harrison that "we beat the write up it was just in retaliation for the PREA from Lt. Garcia," and Defendant Harrison stated "[t]hat PREA shit don't matter."  (*Id*.)  Plaintiff alleges that on that same day he was served a misconduct by Defendant Sherrill, and Plaintiff states that he "explained to him the situation he then said to me and my cellmate 'I will beat you both the fuck up and spray you' and also stated 'Fuck your PREA.'"  (*Id*.)  Plaintiff alleges that he reported this to the "same people as well."  (*Id*.)

Plaintiff alleges that "[t]hen on October 22nd, 2022 Lt. M. Conrad told me 'You're a rat you don't think I know you filed paperwork on me you['re] dead bitch.'"  (*Id*.)

Plaintiff further alleges that "[t]he retaliation continued" on November 1, 2022, when he was placed in a holding tank and Defendant Guzenski said "[h]ow do you think things are going to go for you now."  (*Id*.)  Defendant Klapat allegedly said "ohh you['re] fucked, you['re] gonna die down here were gonna fucking kill you."  (*Id*.)  Defendant Shistle allegedly said "you['re] a dirty fucking disgusting monkey, no you['re] a fucking pedophile, they train people in the Army to throw shit, you['re] gonna die."  (*Id*.)  Plaintiff alleges that Defendant Benscoter

---

[8] The court surmises that DWOP stands for "dismissed for want of prosecution."

said "these other CO's might be scared to do something to you but I'm not, I'm gonna kill you." (*Id*.)  He alleges that Defendant Adamson said "you['re] a dead pedophile walking" and laughed.  (*Id*.)  He alleges that Defendant Dileo said "I can't wait to mace the fuck out of you."  (*Id*.)  He was then taken to cell KB21, which had no running water and the sink and the toilet were filled with dirty linens. (*Id*.)  He further alleges that around 11:00 a.m., Defendant Klapat came with Defendant Simpson and walked past his door and did not give him food.  (*Id*.)  He alleges that one of these two defendants said "I told you you['re] a dead Bitch." (*Id*.)

Plaintiff then alleged that the next day, when the Peer Review Committee, including Defendants Bohinski, Contreras, Goyne, Mangan, Inniss, Austin, Growhowski, and Guzenski, came around, he informed them that he had not been fed since November 1, 2022. (*Id*.)  Plaintiff alleges that he continued to be starved by the Correctional Officers.  (*Id*., p. 7.)

Plaintiff alleges that on November 3, 2022, he was moved to cell KB35 by Defendants Gavlick, Letinski, and Sherrill who allegedly asked Plaintiff why there was food all over the floor and why there were dirty linens on the floor.  (*Id*.) Plaintiff alleges that Defendant Sherrill called him an animal.  (*Id*.)

Plaintiff also states that Defendants Klapat, Shistle, Adamson, Benscoter, Dileo, Sherrill, Letinski, Zagata, Scopata, Havard, Stark, and Simpson did not feed

him for "the next following days and weeks."  (*Id*.)  Plaintiff specifically alleges that on November 11, 2022, Defendant Stark gave him only a slice of cheese and a muffin.  (*Id*.)

Based on these alleged facts, and liberally construing Plaintiff's petition, he raises the following claims: (1) a First Amendment retaliation claim against Defendants Garcia, Conrad, Harrison, and Sherrill; (2) an Eighth Amendment cruel and unusual punishment claim against Defendants Sherrill, Shistle, Klapat, Adamson, Benscoter, Dileo, Letinski, Zagata, Sopata, Havard, Stark, and Simpson; (3) a unidentified Fourteenth Amendment claim against Defendant Sherrill; and (4) an Eighth Amendment deliberate indifference claim  against Defendants Letinski, Gavlick, Bohinski, Contreras, Goyne, Mangan, Inniss, Austin, and Growhowski. (*Id*., pp. 7–9.)

All Defendants were served in this action, and all but one defendant has appeared in the action.[9]  (Docs. 28, 29, 36, 37, 38, 57.)  On March 3, 2023, Defendants Goyne, Simpson, Bohinski, Guzenski, Austin, Conrad, Inniss, Letinski, Sherrill, Adamson, Klapat, Mangan, Havard, Contreras, Shistle, Sopata, and Gavlick filed the instant motion to dismiss through Attorney Bowers.  (Doc. 35.) On March 13, 2023, Attorney Bowers entered a notice of appearance on behalf of

---

[9] Defendant Stark has failed to appear in this court.  (Doc. 57.)

the seventeen defendants that filed the motion to dismiss and on behalf of Defendants Benscoter, Zagata, Harrison, and Growhowski.  (Doc. 36.)  On March 22, 2023, Attorney Bowers entered a notice of appearance on behalf of Defendants Dileo and Garcia.  (Doc. 42.)  On April 6, 2023, Defendants filed their brief in support under the name of all twenty-three defendants Attorney Bowers represents.[10]  (Doc. 52.)  On May 24, 2023, Plaintiff filed his brief in opposition to the motion.  (Doc. 64.)

On June 13, 2023, Plaintiff filed a motion for default and a declaration in support.  (Docs. 68, 69.)  He filed his brief in support on July 18, 2023.  (Doc. 73.) While the motion for default appears to be seeking default against all twenty-four defendants, the brief in support specifically requests default be entered against Defendants Stark, Garcia, Harrison, Benscoter, Dileo, Zagata, and Growhowski. (*Id.*)  No defendants have responded to this motion for default.

On July 18, 2023, Plaintiff filed his fifth motion for appointment of counsel. (Doc. 75.)

On September 15, 2023, Plaintiff filed a request for production of documents and a set of interrogatories.  (Docs. 80, 81.)

---

[10] The court construes the motion to dismiss to be filed by the twenty-three Defendants who filed the brief in support.

The court will now address the pending motions and pending discovery requests in turn.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Dallas, located in Luzerne County, Pennsylvania, which is located within this district.  *See* 28 U.S.C. § 118(b).

## MOTION TO DISMISS STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193

10

(3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be

granted leave to file a curative amended complaint even when a plaintiff does not

seek leave to amend, unless such an amendment would be inequitable or futile.

*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir.

2014); *see also Phillips*, 515 F.3d at 245.  A complaint that sets forth facts which

affirmatively demonstrate that the plaintiff has no right to recover is properly

dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d

103, 106 (3d Cir. 2002).

**DISCUSSION**

### A. Defendants' Motion to Dismiss the Complaint for Violation of Fed. R. Civ. P. 8 & 10 Will Be Denied.

Defendant's motion alleges that since Plaintiff failed to present his amended

complaint in accord with Fed. R. Civ. P. Rules 8 and 10, the complaint should be

dismissed.  (Doc. 52, p. 11.)  Rule 8(a) requires a pleading contain "a short and

plain statement" of the court's jurisdiction and of the claim.  Rule 10 requires

claims to be set forth in numbered paragraphs, "each limited as far as practical to a

single set of circumstances."

Plaintiff's amended complaint sets forth his claims in a single paragraph that

is four pages in length and generally lacks punctuation.  (Doc. 16, pp. 6–9.)

Defendants are correct that the amended complaint violates Rules 8 and 10.

However, the pleadings of self-represented plaintiffs are to be liberally construed

11

and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson*, 551 U.S. at 94; *Fantone*, 780 F.3d at 193.  Therefore, the court will not dismiss the amended complaint on these grounds, and Defendants' motion will be denied as to this argument.

### B. Defendants' Motion to Dismiss the Complaint for Violation of Fed. R. Civ. P. 20 Will Be Denied.

Plaintiff's amended complaint raised multiple claims against multiple Defendants.  (Doc. 16, pp. 3–15.)  Defendants seek to have the amended complaint dismissed for bringing multiple unrelated claims in violation of the Federal Rules of Civil Procedure.  (Doc. 52, pp. 8–13.)

A plaintiff may not bring unrelated claims against unrelated parties in a single action.  *See* Fed. R. Civ. P. 18(a); 20(a)(2).  A plaintiff may bring a claim against multiple defendants so long as (1) the claims arise out of the same transaction or occurrence, or series of transactions and occurrences; and (2) there are common questions of law or fact.  *See* Fed. R. Civ. P. 20(a)(2).  Courts have broad discretion in applying Fed. R. Civ. P. 20 to reduce inconvenience, delay, and added expense to the parties and to the court, and to promote judicial economy. *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009).  However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit.  *See, e.g., Pruden v. SCI Camp Hill*, 252 Fed.Appx. 436 (3d Cir. 2007) (nonprecedential).

As discussed above, pro se complaints are to be construed liberally.  *See Erickson*, 551 U.S. at 94; *Fantone*, 780 F.3d at 193.  While Defendants have attempted to isolate the alleged occurrences identified in the amended complaint, when the amended complaint is read in context, Plaintiff has provided sufficient connecting phrases to view all these occurrences as actions of continuing retaliation for the initial PREA complaint filed in response to the alleged September 22, 2023 comments by Defendant Garcia.  These phrases include "then," "the retaliation continued," and "I fear that the retaliation will only progress."  (Doc. 16, pp. 5–6.)  Additionally, in the quoted materials the Defendants repeatedly refer to the PREA that was filed following the September 22, 2023 event.  (*Id*., pp. 5–6.)  Therefore, even if the amended complaint is not eloquently pled, it is sufficiently pled to be construed as raising a single series of occurrences and not in violation of the Fed. R. Civ. P. 20.  Therefore, Defendant's motion will be denied as to this argument.

### C. All State Law Claims Will Be Dismissed.

Defendants argue that in the amended complaint, Plaintiff raises claims of intentional infliction of emotional distress, harassment, and criminal conduct. (Doc. 52, pp. 14–16.)  To the extent the amended complaint can be construed to raise these and other state law claims, such claims will be dismissed.

First, the court cannot identify any alleged elements for intentional infliction of emotional distress or negligent infliction of emotional distress in the amended complaint.[11]  A claim for intentional infliction of emotional distress under Pennsylvania law requires four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982).  To set forth a claim for negligent infliction of emotional distress in Pennsylvania, a plaintiff must also establish at least one of the following factual scenarios:

> (1) impact liability where emotional distress is accompanied by physical injury or impact; (2) zone of danger liability where emotional distress is inflicted on a plaintiff who was in close proximity of physical impact and thereby reasonably experienced a fear of physical injury; (3) bystander liability for emotional distress experienced by a plaintiff who personally witnessed an impact upon a close relative; and (4) special relationship liability premised on the breach of a preexisting contractual or fiduciary relationship that foreseeably resulted in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress.

*Humphries v. Pennsylvania State Univ.*, 492 F. Supp.3d 393, 409 (M.D. Pa. 2020) (citing *Doe v. Phila. Cmty. Health Alts. AIDS Task Force*, 745 A.3d 25, 27–28 (Pa. Super. 2000)); *see also Goodson v. Kardashian*, 413 F. App'x 417, 418 (3d Cir. 2011) (describing the elements of a claim for negligent infliction of emotional

---

[11] While Defendants do not address negligent infliction of emotional distress in their briefing, it is included in the litany of claims raised by Plaintiff.  (Doc. 16, pp. 10–11.)

distress in Pennsylvania); *see also Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000) (citing § 46 of the Restatement (Second) of Torts "as setting forth the minimum elements necessary to sustain such a cause of action.").

Defendants address the intentional infliction of emotional distress claim alleging that the alleged conduct was not outrageous, and failed to address the negligent infliction of emotional distress claim.  (Doc. 52, p. 11.)  Without addressing the outrageousness of the alleged conduct, the court finds that Plaintiff's amended complaint does not plead the elements of intentional or negligent infliction of emotional distress.  Therefore, any such claims will be dismissed without prejudice.

Second, the amended complaint contains multiple references to harassment. (Doc. 16, pp. 7–8.)  The court agrees with Defendants that harassment is not a tort under Pennsylvania law.  *See Prukala v. Elle*, No. 3:14-cv-92, 2014 WL 1311125 at *5 (M.D. Pa. Mar. 28, 2014) ("'Pennsylvania courts have not . . . recognized a separate tort of harassment.'" (quoting *DeAngelo v. Fortney*, 357 Pa.Super. 127, 132, 515 A.2d 594, 596 (1986))); *UTZ v. Johnson*, No. 04-CV-0437, 2004 WL 1368824, at *2 (E.D. Pa. 2004) (collecting cases) ("We note that most courts that have addressed this issue have declined to recognize claims for harassment and/or prima facie tort in Pennsylvania."); *Abdullah v. Fetrow*, No. 1:05-CV-1135, 2006 WL 1274994 at *8 (M.D. Pa. May 8, 2006) ("Finally, there does not exist a cause

of action for 'harassment' under Pennsylvania law."). Therefore, all harassment claims raised in this civil action will be dismissed with prejudice.

Third, the court will dismiss all criminal claims brought in the amended complaint. Plaintiff cites multiple criminal codes, Doc. 16, p. 11, but a civil action is not the appropriate place to litigate criminal matters nor does Plaintiff have a cognizable interest in the criminal prosecution of others. *See Mitchell v. McNeil,* 487 F.3d 374, 378 (6th Cir.2007) (citing *Linda R.S. v. Richard D.,* 410 U.S. 614, 619, (1973) (observing that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another")). Therefore, any criminal claims brought in the amended complaint will be dismissed with prejudice.

## D. All First Amendment Claims Related to Alleged Hate Speech Will Be Dismissed With Prejudice.

Plaintiff's amended complaint appears to allege that his First Amendment rights were violated by the speech of multiple Defendants. (Doc. 16.) However, this is an inaccurate application of the First Amendment. The First Amendment prohibits governmental action "abridging the freedom of speech." U.S. Const., amend. I. Therefore, the First Amendment serves as a form of protection for an individual's speech from retaliation or muzzling by the government, and not as a means of preventing government officials or individuals from speaking. Plaintiff relies on *Chaplinksy v. State of New Hampshire*, 315 U.S. 568 (1942) in support of his assertion that Defendants' alleged fighting words or hate speech violated his

First Amendment rights.  (Doc. 16, p. 10.)  However, the Court in *Chaplinksy* simply held that such fighting words are not protected by the First Amendment and could be criminalized under the state criminal code.  315 U.S. at 573.  This means that such utterances cannot be shielded from government interference or prosecution, not that such words or phrases violate the First Amendment rights of another individual.  Therefore, Defendants' motion to dismiss will be granted on this issue, and any First Amendment claims related to hate speech will be dismissed with prejudice.

### E.  All Deliberate Indifference Claims Raised Against Supervisors Will Be Dismissed Without Prejudice.

Plaintiff's amended complaint raises Eighth Amendment deliberate indifference claims against Defendants Letinski, Gavlick, Bohinski, Contreras, Goyne, Mangan, Inniss, Austin, and Growhoski based on their role as supervisors. (Doc. 16, p. 9.)

Supervisory liability under § 1983 utilizes the same standard as municipal liability.  *See Carter v. City of Philadelphia,* 181 F.3d 339, 356 (3d Cir. 1999).  A supervisor will only be liable for the acts of a subordinate if he fosters a policy or custom that amounts to deliberate indifference towards an individual's constitutional rights.  *See Id.* at 357.  To establish supervisory liability, a plaintiff must show that (1) a superior officer failed to employ a specific supervisory practice; (2) the existing custom created an unreasonable risk of injury in the

absence of the specified supervisory practice; (3) the supervisor was aware that the risk existed; (4) the supervisor was indifferent to the risk; and (5) the underlying violation resulted from the failure to employ the supervisory practice. *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 216 (3d Cir. 2005) (*citing Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989)). Here, Plaintiff fails to allege the existence of a policy or custom or that these named supervisors had any role in the creation of implementation of any such custom or policy. Therefore, this claim will be dismissed without prejudice.

### F. First Amendment Retaliation Claim Against will be Dismissed Without Prejudice Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff specifically alleges a First Amendment retaliation claim against Defendants Garcia, Conrad, Harrison, and Sherrill. (Doc. 16.) While Defendants' motion to dismiss did not challenge the retaliation claim, the court has the authority to dismiss any claims that fail to state a claim for which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts. *Fantone*, 780 F.3d at 191. A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or

motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment.  *Fantone*, 780 F.3d at 191.

Here, Plaintiff raises retaliation claims against Defendants Garcia, Conrad, Harrison, and Sherrill, but he has failed to specifically allege that he filed a grievance against any of these Defendants.  (Doc. 16.)  However, Plaintiff implies that he filed a PREA complaint against Defendant Garcia because he alleges that other staff members attempted to have the PREA complaint removed and he was being retaliated against for filing the PREA.  (*Id*., p. 5.)

The failure to file a grievance against Defendants Conrad[12], Harrison, and Sherrill affects the third element of retaliation claims.  This court has repeatedly refused to find a causal connection when the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity.  *See Calloway v. Bauman*, No. 2:20-cv-2337, 2022 WL 4357468, at *9 (M.D. Pa. Sep. 20, 2022) *citing Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *also citing Evans v. Rozum*, 2009 WL 5064490,

---

[12] The court notes that Plaintiff did allege that Defendant Conrad stated, "You're a rat you don't think I know you filed paperwork on me you['re] dead bitch."  (Doc. 16, p. 6.)  However, Plaintiff failed to plead that this "paperwork" was a grievance or a PREA complaint, or any other constitutionally protected conduct.

at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others."); *also citing Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity). Therefore, the retaliation claim against Defendants Conrad, Harrison, and Sherrill will be dismissed without prejudice.

Plaintiff did allege retaliation by Defendant Garcia, who was the subject of the PREA complaint. However, Plaintiff failed to allege that Defendant Garcia took any adverse action against him following the filing of the PREA complaint. (Doc. 16.) Therefore, the First Amendment retaliation claim against Defendant Garcia will also be dismissed without prejudice.

### G. The Fourteenth Amendment Claim Against Defendant Sherrill Will be Dismissed Without Prejudice Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff brings a Fourteenth Amendment claim against Defendant Sherrill for "when he used his speech to invoke violence, did not feed me, let me clean my cell, and threatened me." (Doc. 16, p. 8.)

The Fourteenth Amendment also provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of

law[.]" *See* U.S. Const. amend. XIV.  A Fourteenth Amendment due process claim requires that a liberty interest be at stake:

> Procedural due process rights are [only] triggered by deprivation of a legally cognizable liberty interest.  For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*." Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.E.2d 418 (1995).  In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) whether the conditions of confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement.  *See id*. at 468, 115 S.Ct. 2293; *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000).

*Huertas v. Sec'y of Pa. Dep't of Corr.*, 533 F. App'x 64, 66 (3d Cir. 2013).  Here, it appears that Plaintiff's complaint does not address a liberty interest, but an Eighth Amendment protection against cruel and unusual punishment claim.  Therefore, absent a more specific allegation involving a liberty interest, the court will dismiss the Fourteenth Amendment claim without prejudice.

### H. Plaintiff's Eighth Amendment Claim will Proceed.

Plaintiff raises an Eighth Amendment cruel and unusual punishment claim against Defendants Sherrill, Shistle, Klapat, Adamson, Benscoter, Dileo, Letinski, Zagata, Sopata, Havard, Stark, and Simpson. (Doc. 16, pp. 7–9.)  Defendants do not address this claim in their motion to dismiss.  As such, this claim survives, and will proceed to the discovery phase of litigation if Plaintiff chooses not to file a second amended complaint.

## I. Plaintiff's Motion for Default will be Denied.

On June 13, 2023, Plaintiff filed a motion for default alleging that Defendants have failed to answer or respond to his amended complaint. (Docs. 68, 69.) However, twenty-three of the twenty-four named defendants have appeared and taken part in the motion to dismiss as discussed above. Therefore, as to the twenty-three defendants who did appear and respond, Plaintiff's motion will be denied with prejudice.

This leaves the issue of Defendant Stark's failure to appear. Waiver of Service forms were sent to all named defendants. (Doc. 23.) However, after all Defendants failed to appear, the United States Marshals served the Attorney General of Pennsylvania. (Doc. 37.) Despite these attempts at service, Defendant Stark has failed to appear in this action. (Doc. 57.) It is unclear if Defendant Stark is refusing to appear out of malice or if Defendant Stark cannot be properly identified to achieve service. Considering the unartfully pled amended complaint with multiple name misspellings and the fact that service was made on the Attorney General of Pennsylvania and not the individual defendants, the court will direct the United States Marshals to serve Defendant Stark directly, and grant Defendant Stark an additional opportunity to appear in this matter or face default judgment being entered against him or her. Therefore, Plaintiff's motion will be

denied without prejudice to raising it later against Defendant Stark if he or she fails to appear after service is attempted again.

### J. Plaintiff's Motion for Appointment of Counsel will be Dismissed.

Plaintiff filed his fifth motion for appointment of counsel on July 18, 2023. (Doc. 75.)  Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the court has discretion to "request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1); *see Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019).  The appointment of counsel is a privilege, not a statutory or constitutional right. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).  However, representation by counsel may be appropriate under certain circumstances after a finding that the plaintiff's case has arguable merit in fact and law.  *Tabron*, 6 F.3d at 155.  If the court finds that the plaintiff has crossed this threshold inquiry, the court should consider the following factors in deciding whether to request a lawyer to represent an indigent plaintiff:

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the plaintiff's ability to retain counsel on his or her own behalf;
> (5) the extent to which a case is likely to turn on credibility determinations, and;
> (6) whether the case will require the testimony of expert witnesses.

*Tabron*, 6 F.3d at 155-57.  This list of factors is non-exhaustive, and no single factor is determinative.  *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1997)).  Instead, these factors serve as guideposts for the district courts to ensure that the precious commodity of volunteer attorney time is not "wasted on frivolous cases." (*Id.*)

Plaintiff is requesting the appointment of counsel for three reasons: (1) his incarceration will limit his ability to litigate the case; (2) he is unable to afford counsel; and (3) a trial will likely involve conflicting testimony, and counsel will better enable him to present evidence and cross-examine witnesses.  (Doc. 75.) Up to this point, Plaintiff has demonstrated the ability to litigate his case, including attempts at discovery.  *See infra*.  Thus, appointment of counsel is not warranted at this time.  If future proceedings demonstrate the need for counsel, the matter will be revisited.

### K. Plaintiff's Discovery Requests will be Dismissed.

Plaintiff has filed a request for the production of documents and for interrogatories.  (Docs. 80, 81.)  Pursuant to Fed. R. Civ. P. 34, such discovery requests are to be served on the other party, and not the court.  Therefore, these requests will be dismissed as improperly filed.

## CONCLUSION

For the reasons set forth above, the court will deny in part and grant in part Defendants' motion to dismiss.  Plaintiff will be granted leave to file a second amended complaint.  Such document shall be titled "second amended complaint" and be filed under the same case number.  Plaintiff is cautioned that any amended pleading stands alone pursuant to Local Rule 15.1.  Therefore, the second amended complaint must raise <u>all</u> claims for which Plaintiff seeks relief, including those claims that were not dismissed in the accompanying order.

The court will deny Plaintiff's motion for default and make a final attempt to serve Defendant Stark.  The court will deny Plaintiff's motion for appointment of counsel without prejudice.  The court will also dismiss Plaintiff's discovery requests.  Considering this order disposes of the pending motion to dismiss, Defendants' motion to stay discovery pending motion to dismiss will be denied as moot.

An appropriate order follows.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: November 29, 2023