## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JALIL S. REED, | : | Civil No. 1:22-CV-01832 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LT. GARCIA, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Jalil S. Reed ("Plaintiff") has filed a request for an entry of default judgment and a motion for default judgment.  (Docs. 108, 109.)  Also pending are Defendants' motion for partial[1] dismissal of the second amended complaint and Plaintiff's motion for appointment of counsel.  (Docs. 103, 119.)  In light of Cody Starck's recent appearance in this action, the court will deny Plaintiff's request for entry of default judgment and motion for default judgment.  The court will grant in part and deny in part Defendants' motion for partial dismissal of the second amended complaint and deny Plaintiff's motion for appointment of counsel.

### PROCEDURAL HISTORY

Plaintiff initiated this action in November of 2022 by filing a complaint. (Doc. 1.)  The complaint was initially dismissed pursuant to 28 U.S.C. 1915(e)(2)(B)(ii).  Plaintiff subsequently filed an amended complaint in December

---

[1] While Defendants characterize this motion as seeking partial dismissal, it fails to state what claims it does not challenge.  (Docs. 103, 109.)

of 2022.  (Doc. 16.)  On January 4, 2023, the court ordered the amended complaint

forwarded to all twenty-four defendants in this action along with waiver of service

forms.  (Doc. 23.)  In that order, the court clearly placed the burden of properly

identifying defendants on Plaintiff:

> If service is unable to be completed due to Plaintiff's failure to properly
> name the Defendants, or provide a correct mailing address, Plaintiff
> will be required to correct this deficiency.  Failure to comply may result
> in the dismissal of Plaintiff's claims against Defendants pursuant to
> Federal Rule of Civil Procedure 4(m).

(*Id.*, p. 1.)[2]

After the defendants failed to waive service, the court entered an order

directing the United States Marshals Service to serve all defendants with a

summons and complaint.  (Doc. 27.)  On March 8, 2023, Nicole Hogan, Assistant

to the Superintendent, received the summons and complaint on behalf of all

twenty-four defendants, including Defendant Stark.  (Doc. 39.)[3]  On March 13,

2023, the Attorney General of Pennsylvania was also served with the summons and

complaint.  (Doc. 37.)  That same day, Attorney Anthony R. Bowers entered a

notice of appearance on behalf of all the defendants in this action, except

[2] For ease of reference, the court utilizes the page numbers form the CM/ECF header.

[3] Pursuant to Fed. R. Civ. P. 4(d)(2), the court will grant Defendants ten (10) days to file a statement of good cause as to why they failed to sign and return a waiver of service.  Failure to provide good cause may result in the expense incurred in service being imposed against them.

Defendant Stark.  (Doc. 36.)  On April 24, 2023, the court ordered Defendant Stark to appear in the action or face default judgment.  (Doc. 57.)

The other defendants who appeared in the action filed a motion to dismiss the amended complaint.  (Doc. 35.)  Following briefing, the court granted the motion in part and gave Plaintiff an opportunity to amend his complaint.  (Docs. 93, 94.)  The court also addressed the nonappearance of Defendant Stark and ordered the United States Marshals Service to serve the summons and the amended complaint upon Defendant Stark.  (Doc. 94.)[4]  On December 14, 2023, Nicole Hogan again received the summons and complaint on behalf of Defendant Stark. (Doc. 100.)

The court received and docketed Plaintiff's second amended complaint on December 14, 2023.  (Doc. 98.)

Now pending before the court is Plaintiff's March 19, 2024 motion for default judgment to be entered against Defendant Stark.  (Doc. 109.)

On March 22, 2024, the court entered an order requiring a status report from Defendants to ascertain if Defendant Stark was refusing to appear out of malice or

---

[4] The memorandum accompanying the order states the following: "It is unclear if Defendant Stark is refusing to appear out of malice or if Defendant Stark cannot be properly identified to achieve service.  Considering the unartfully pled amended complaint with multiple name misspellings and the fact that service was made on the Attorney General of Pennsylvania and not the individual defendants, the court will direct the United States Marshals to serve Defendant Stark directly, and grant Defendant Stark an additional opportunity to appear in this matter or face default judgment being entered against him or her."  (Doc. 93, p. 22.)

if his nonappearance was due to the unartfully pleaded amended complaint or an inability to identify the intended party.  (Doc. 113.)  On April 2, 2024, Defendants' counsel, Erich Greiner, entered a notice of appearance on behalf of Cody Starck and filed a brief in opposition to the motion for default.  (Docs. 115, 116.)  On April 5, 2024, defense counsel filed a status report explaining that the amended complaint named "C.O. Stark" as a party to the action, and there is more than one potential "Stark" employed at State Correctional Institution Dallas ("SCI-Dallas").  (Doc. 117.)  The status report detailed the Department of Correction's attempts to identify the appropriate "Stark" named in the amended complaint, and eventually identified Cody Starck.  (*Id.*)[5]  Plaintiff filed a reply on April 25, 2024.  (Doc. 118.)

Additionally, on April 26, 2024, the court received and docketed Plaintiff's motion to appoint counsel and notice of an upcoming transfer.  (Doc. 119.)  On May 2, 2024, the court received and docketed a letter confirming Plaintiff's recent transfer to SCI-Fayette.  (Doc. 120.)

---

[5] Defense counsel requests guidance as to whether he should file a separate additional or amended responsive pleading or motion on Defendant Starck's behalf considering the pending motion to partially dismiss the second amended complaint was filed prior to Defendant Starck's appearance in the case.  (Doc. 117, p. 4.)  For the sake of judicial economy, the court will address the pending motion to partially dismiss the second amended complaint presently and draw its authority to dismiss any claims against Defendant Starck through its inherent screening power provided in 28 U.S.C. § 1915(e).

The court will now address the pending request and motion for default, motion to partially dismiss the second amended complaint, and the motion to appoint counsel in turn.

## DISCUSSION

### A. Plaintiff's Request for Default and Motion for Default Will Be Denied.

Plaintiff filed both a request for default and a motion for default.  (Docs. 108, 109.)  Both of these will be denied.

The entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 55.  Under subsection (a), the Clerk of Court is instructed to enter a default against a defendant who "has failed to plead or otherwise defend" and whose "failure is shown by affidavit or otherwise[.]"  *See* Fed. R. Civ. P. 55(a).  An entry of default under subsection (a) is a prerequisite to the entry of a default judgment under subsection (b).  *See* Fed. R. Civ. P. 55(b); *Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015) (unpublished) (explaining that, "[b]efore a plaintiff can obtain a default judgment pursuant to Rule 55(b), a plaintiff must secure an entry of default per Rule 55(a)" (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2682, at 13 (3d ed. 1998))); *Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir. 2008) (unpublished) (explaining that the "entry of default by the Clerk under Federal Rule of Civil Procedure 55(a) constitutes a general prerequisite for a

subsequent default judgment under Rule 55(b)" (citation omitted)).  Here, while no default has yet been entered by the Clerk of Court, Plaintiff is requesting such a default be entered against Defendant Stark.  (Doc. 108.)

The court acknowledges Plaintiff's frustration at the continued delay in the appearance of Defendant Cody Starck.  However, the court has repeatedly cited the poorly pleaded complaint and amended complaint that potentially contributed to the difficulties in identifying the intended party.  (Doc. 93, p. 22.)  Furthermore, the order serving the amended complaint clearly placed the burden on Plaintiff to properly identify the intended parties to the action to allow for appropriate service. (Doc. 23, p. 1.)  Therefore, the incorrect spelling of the last name combined with no first name and merely identifying Defendant Stark by his title "Correctional Officer" resulted in Plaintiff failing to meet his burden.  (Docs. 1, 16, 98.) Accordingly, the court will deny the request for default and the motion for default judgment in the action.

   **B. Defendant's Motion to Partially Dismiss the Second Amended Complaint Will Be Granted in Part.**

Defendants filed a motion to partially dismiss the second amended complaint.  (Doc. 103.)  The court will grant the motion in part and deny the motion in part.

### 1. Summary of Second Amended Complaint

In the second amended complaint, Plaintiff named twenty-four defendants:
(1) Lieutenant Garcia ("Garcia"); (2) Lieutenant Conrad ("Conrad"); (3) C.O.
Harrison ("Harrison"); (4) C.O. E. Sherrill ("Sherrill"); (5) C.O. Shistle ("Shistle");
(6) C.O. Klapat ("Klapat"): (7) C.O. Adamson ("Adaminson")[6]; (8) C.O. Benscoter
("Benscoter"); (9) C.O. Dileo ("Dileo"); (10) C.O. Letinski ("Letinski"); (11) C.O.
Zagata ("Zagata"); (12) C.O. Sopata ("Sapata")[7]; (13) C.O. Havard ("Havard");
(14) C.O. Stark ("Starck")[8]; (15) C.O. Simpson ("Simpson"); (16) Lieutenant
Guzenski ("Guzenski"); (17) Lieutenant Gavlick ("Gavlick"); (18) Deputy Warden
Bohinski ("Bohinski"); (19) Deputy Warden Contreras ("Contreras"); (20) Major
Goyne ("Goyne"); (21) Counselor Mangan ("Mangan"); (22) Classification
Committee Program Manager Inniss ("Inniss"); (23) P.S.S. Austin ("Austin"); and
(24) Unit Manager Growhowski ("Grohowski")[9]. (Doc. 98, pp. 2–4.)

The second amended complaint begins by alleging that on September 22,
2022, Defendant Garcia repeatedly told Plaintiff and his cellmate to "suck his

---

[6] C.O. Adamson entered a notice of appearance under the name "Adaminson." (Doc. 38.)

[7] C.O. Sopata entered a notice of appearance under the name "Sapata." (Doc. 38.)

[8] As noted above C.O. Stark has been identified as Cody Starck.

[9] Unit Manager Growhowski has made an appearance under the corrected name of "Grohowski." (Doc. 36.)

dick."  (Doc. 98, p. 10.)  Plaintiff alleges that he informed the medical department,
and the administration, which included, Defendants Bohinski, Contreras, and
Goyne, and non-parties Superintendent Ransom, Nicole Hogan, an unidentified
"Major," and the "OOTAG PREA Coordinator."  (*Id.*)

On September 23, 2022, Defendant Conrad attempted to bribe and
intimidate him by telling him to "make this go away" and slid him a PREA
statement through the tray-pass and instructing Plaintiff "to put that someone else
wrote the PREA and I didn't."  (*Id.*)  Plaintiff further alleges that he refused and
was told by Defendant Conrad "[I]t's time you look out I'm always doing you
favor[]s."  (*Id.*)  When he refused again, Defendant Conrad allegedly stated "it
isn't the same when you put a PREA on a c.o.  This is a Lt. It will go away nothing
will happen and you will get a write up for a false PREA."  (*Id.*)  Plaintiff alleges
that he then completed a PREA report and while he was filling it out, his cellmate
stated that he had filled one out earlier.  (*Id.*)  He also alleges that he and his
cellmate were "already being Retaliated against by not being allowed to shower, go
to the yard, and given cold finger food."  (*Id.*)

On September 29, 2022, Defendant Harrison told Plaintiff "I'm just gonna
rewrite it, I've talked to Charlie and that it was gonna be Dismissed Without
Prejudice (DWOP)."  (*Id.*)  Plaintiff allegedly told Defendant Harrison that "we
beat the write up it was just in retaliation for the PREA from Lt. Garcia," and

Defendant Harrison stated "[t]hat PREA shit don't matter." (*Id*.) Plaintiff alleges that on that same day he was served a misconduct. (*Id*.) He further alleges that Defendant Sherrill told him and his cellmate "I will beat you both the fuck up and spray you" and he also stated "Fuck your PREA." (*Id*.) He further alleges that Defendant Sherrill stated, "I don[']t like people with your kids of cases, you['re] a pedophile." (*Id*.) Plaintiff denied being a pedophile and alleges that "[d]espite my efforts Defendant E. Sherrill continued to slander my name to other inmates and attempted to get other inmates to revel against me!" (*Id*.)

Plaintiff alleges that on October 22, 2022 Defendant Conrad told him "You're a rat you don't think I know you filed paperwork on me you['re] dead bitch." (*Id*.) Plaintiff alleges that he filed a complaint on him and Defendant Conrad began telling other inmates that he held two little girls at gun point and raped them, which Plaintiff states is untrue. (*Id*.)

Outside of the narrative statement of facts summarized above, Plaintiff provided a statement of facts organized by claim. (*Id*., pp. 5–9.) First, Plaintiff presents a slander/defamation claim against Defendants Conrad, Sherrill, Shistle, Klapat, Adaminson, Benscoter, Dileo, Letinski, Zagata, Sapata, Havard, Starck, Simpson, Guzenski, and Austin. (*Id*., p. 5.) Plaintiff states that "all of the above named Defendant[]s called me a 'Pedophile', 'Rapist', 'child Toucher' which is untrue and continued to spread the lies to other inmates to become irate and

aggressive towards me, even making threats to end my life." (*Id*.)  Plaintiff states that he told the Defendants that these allegations about being a pedophile, rapist, and child toucher were not true.  (*Id*.)  He further alleges that even after his transfer, he continues to run into inmates who believed Defendants' statements, causing continued anxiety, irreparable mental anguish and increased depression. (*Id*.)

Next, Plaintiff brings an Eighth Amendment deliberate indifference claim against Defendants Letinski, Conrad, Guzenski, Gavlick, Bohinski, Contreras, Boyne, Mandgan, Innis, Austin, and Grohowski stating that "the above named Defendant[]s were superior as of rank and authority of the time of incident[]s, they had a duty to protect, intervene and supervise but have failed to do so.  The named Defendant[]s were informed of the risks and violations that were occurring and did nothing about it . . ."  (*Id*.)  He further alleges that he told the Defendants that he feared continued retaliation due to the filing of a PREA complaint, they noted his complaint, and did nothing to help him.  (*Id*.)  He further alleges that Defendants' "allowed their subordinate[]s to act deliberately indifferent, by setting the [precedence] of how to treat me when it came to depriving me of food, yard, clothes, showers, and not allowing me to get grievances by telling defendant[]s if it's not a hustle or inconvenience they will try to get you a grievance but we prefer to 'handle everything in-house and off the record.'"  (*Id*., pp. 5–6.)

Third, Plaintiff raises a First Amendment retaliation claim against all Defendants stating that after all of the Defendants were served with a copy of the complaint, they "continued to deprive me of food, water, shower, exercise, cleaning materials, grievances, and continued to use libel and slander/Defamation and typically state 'put that in your lawsuit' or would state 'It's not my money, it's the state[']s money.'"  (*Id.*, p. 6.)  Plaintiff states that he was "legally allowed to do what I was doing despite the increasing threats, deprivations and social outcast, when other would give up after the death threats, starvation and being used as a social outcast in a solitary confinement setting . . ."  (*Id.*)  His allegations are unclear but either "they" or Defendant Guzenski offered incentives such as extra trays, yard possibility, shower, and "a week of cease fire."  (*Id.*)  He states that "The Administration" or Defendant Contreras stated "you want this to stop, then you need to stop."  (*Id.*)

Fourth, Plaintiff raises a First Amendment access to the court claim against all Defendants alleging they would threaten to deny him grievances, not issue any of the grievance responses, lie to him about the address or the process of the grievance, and generally obstruct him from filing grievances.  (*Id.*, p. 7.)

Fifth, Plaintiff raises an Eighth Amendment cruel and unusual punishment claim against Defendants Sherrill, Shistle, Klapat, Adaminson, Benscoter, Dileo, Letinski, Zagata, Sapata, Havard, Starck, and Simpson.  (*Id.*)  In support of this

claim, Plaintiff alleges that on November 1, 2022 he was placed in a holding tank and Defendant Guzenski said "how do you think things are going to go for you now." (*Id*.) Defendant Klapat allegedly said "ohh you['re] fucked, you['re] gonna die down here we['re] gonna fucking kill you." (*Id*.) Defendant Shistle allegedly said "you['re] a dirty fucking disgusting monkey, no you['re] a fucking pedophile, they train people in the Army to throw shit, you['re] gonna die." (*Id*.) Plaintiff alleges that Defendant Benscoter said "these other CO's might be scared to do something to you but I'm not, I'm gonna kill you." (*Id*.) He alleges that Defendant Adaminson said "you['re] a dead pedophile walking" then laughed. (*Id*.) He alleges that Defendant Dileo said "I can't wait to mace the fuck out of you." (*Id*.) He was then taken to cell KB21, which had no running water and the sink and the toilet held dirty linens. (*Id*.) He further alleges that around 11:00 a.m., Defendant Klapat came by with Defendant Simpson and did not open his tray pass or give him any directions, and did not give him food despite his requests for food. (*Id*., pp. 7–8.) He alleges that Defendant Klapat said "I told you you['re] a Dead Bitch." (*Id*., p. 8)

Plaintiff then alleged that the next day, when the Peer Review Committee, including Defendants Bohinski, Contreras, Goyne, Mangan, Inniss, Austin, Growhowski, and Guzenski, came around, he informed them that he had not been fed since November 1, 2022 and the "aforementioned problems." (*Id*.) Plaintiff

alleges that he they said it was his word against theirs and he continued to be starved by the correctional officers.  (*Id.*, p. 8.)

Plaintiff alleges that on November 3, 2022, he was moved to cell KB35 by Defendants Gavlick, Letinski, and Sherrill.  (*Id.*)  Plaintiff alleges that he asked why there was food all over the floor and why there were dirty linens on the floor and Defendant Sherrill said "why do you care[,] you['re] an animal."  (*Id.*)

Plaintiff also states that Defendants Klapat, Shistle, Adamson, Benscoter, Dileo, Sherrill, Letinski, Zagata, Scopata, Havard, Starck, and Simpson did not feed him for "the next following days and weeks."  (*Id.*)  Plaintiff specifically alleges that on November 11, 2022, Defendant Starck gave him only a slice of cheese and a muffin.  (*Id.*)

Next, Plaintiff's complaint adds twelve additional claims against all Defendants based on the above presented facts: (1) Fourteenth Amendment denial of life's necessities; (2) Eighth Amendment cruel and unusual punishment; (3) torture; (4) negligence; (5) contributory negligence; (6) imputed contributory negligence; (7) failure to protect; (8) failure to supervise; (9) failure to intervene; (10) intentional infliction of emotional distress; (11) malice – negligent infliction of emotional distress; and (12) pain and suffering.  (*Id.*, p. 9.)

### 2.  Rule 12(b)(6) Standard

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. County of*

*Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings,*

*Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts

contained in the complaint, the court may also consider "exhibits attached to the

complaint, matters of public record, as well as undisputedly authentic documents"

attached to a defendant's motion to dismiss if the plaintiff's claims are based upon

these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196

(3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and

held to a less stringent standard than formal pleadings drafted by attorneys.  *See*

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193

(3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be

granted leave to file a curative amended complaint even when a plaintiff does not

seek leave to amend, unless such an amendment would be inequitable or futile.

*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir.

2014); *see also Phillips*, 515 F.3d at 245.  A complaint that sets forth facts which

affirmatively demonstrate that the plaintiff has no right to recover is properly

dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d

103, 106 (3d Cir. 2002).

### 3.  Discussion

Defendants seek dismissal of the First Amendment claims, Eighth Amendment claims, Fourteenth Amendment claims, and state law claims.  (Doc. 105.)  While Defendants characterize their motion as a seeking partial dismissal, they failed to identify what claims they did not intend to challenge, and appear to challenge all claims raised in the second amended complaint.  (Docs. 103, 105.) Therefore, the court will address all claims challenged by Defendants.

### i.  First Amendment Claims

Defendants challenge both Plaintiff's First Amendment retaliation claim and access to the courts claim.  (Doc. 98.)   As to the retaliation claim, Defendants argue that verbal threats, isolated or sporadic denial of privileges, and denial of cleaning supplies, showers, recreation, and grievance forms do not constitute retaliation.  (Doc. 105, pp. 15–17.)  Defendants also argue that the delay between the protected conduct and the alleged retaliatory conduct was too remote to constitute retaliation.  (Doc. 105, pp. 17–19.)  However, the court will not dismiss the retaliation claim for the reasons Defendants identified.

Previously, this court dismissed Plaintiff's First Amendment retaliation claims because Plaintiff failed to properly plead causation.  (Doc. 93, pp. 18–20.) The court found that Plaintiff failed to allege that Defendant Garcia, the subject of the PREA complaint, took any retaliatory action against Plaintiff and that Plaintiff

failed to allege that he filed any grievances against those who did allegedly take the retaliatory action against him.  (*Id*.)  Here, Plaintiff's second amended complaint still fails to allege the necessary facts to overcome this deficiency. (Doc. 98.)  While Plaintiff refers to thwarted attempts at filing grievances, he fails to identify the subjects of these grievances.  Therefore, Plaintiff has failed to state a retaliation claim, and the claim will be dismissed.  Since this is Plaintiff's third attempt to remedy the deficiencies in the complaint, the court finds that further leave to amend would be futile.

Next, Defendants challenge Plaintiff's access to court claim.  (Doc. 105, pp. 19–21.)  Asserting an actionable claim for denial of access to the courts requires a prisoner to allege that (1) they "lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim" and (2) they have no available remedy for the lost claim other than the present denial of access action.  *Rivera v. Monko*, 37 F.4th 909, 915 (3rd Cir. 2022) (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3rd Cir. 2008)).  Most significant is the nonfrivolous nature of the claim allegedly lost.  The lost claim must be "more than hope" in order to be deemed nonfrivolous. *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

Plaintiff claims that Defendants would deny his grievances, not issue any grievance responses, and lie about the address to send the grievance.  (Doc. 98, p. 7.)  However, he has failed to allege that the interference with the administrative

grievance system has resulted in an inability to raise any particular claim in court. Additionally, the court notes that Plaintiff does not identify the underlying conduct complained of in the administrative filings that were the subject of Defendants' alleged interference. Therefore, the court will dismiss this claim. Considering this is Plaintiff's third attempt at his complaint, the court finds leave to further amend would be futile, and the claim will be dismissed with prejudice.

### ii. Eighth Amendment Claims

Defendants challenge Plaintiff's Eighth Amendment failure to protect claims and conditions of confinement claims. (Doc. 105, pp. 21–25.)

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. Amend. VIII. Prison conditions constitute cruel and unusual punishment if they result in a serious deprivation of the prisoner's basic human needs. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). Only conditions that are so reprehensible as to be deemed inhumane under contemporary standards or deprive an inmate of minimal civilized measures of the necessities of life violate the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing

18

the inmate to a substantial risk of serious damage to [his] future health.'"

*Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (quoting *Parkell v.*

*Danberg*, 833 F.3d 313, 335 (3d Cir. 2016)).  Such a claim contains two

requirements: an objective and subjective component.  *Farmer v. Brennan*, 511

U.S. 825, 834 (1994).  A prisoner asserting a claim that the conditions of

confinement violate the Eighth Amendment must allege: (1) that objectively, they

were "incarcerated under conditions posing a substantial risk of serious harm;" and

(2) that the defendant prison official personally knew of the substantial risk to the

inmate's health or safety and failed to "respond [ ] reasonably to the risk."

*Farmer*, 511 U.S. at 834, 844–45.

Here, Defendants argue that since Plaintiff has failed to claim he was

harmed by another inmate, his failure to protect claim must be dismissed.  (Doc.

105, p. 22.)  While this is accurate, Plaintiff's complaint raises more than the risk

of harm by another inmate.  He also raises a conditions of confinement claims on

both a series of threats from multiple Defendants, the prolonged refusal of food,

and being placed in an unclean cell.  (Doc. 98, pp. 7–8.)  While threats do not rise

to the level of an Eighth Amendment claim, *see supra*, the alleged prolonged

refusal of food and keeping Plaintiff in unsanitary conditions may rise to an Eighth

Amendment claim.  Therefore, Eighth Amendment claims based on the failure to

protect and the alleged threats from Defendants to the Plaintiff will be dismissed,

but the Eighth Amendment claim based on the alleged refusal of food and keeping Plaintiff in unsanitary conditions will survive Defendants Rule 12 motion.

The court notes that Defendants address the Fourteenth Amendment and reference Plaintiff's status as a pretrial detainee. (Doc. 105, p. 24.) However, the second amended complaint states that Plaintiff is a convicted and sentenced state prisoner. (Doc. 98, p. 2.) Therefore, the Fourteenth Amendment does not apply to Plaintiff's cruel and unusual punishment claim. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979).

### iii. Fourteenth Amendment Claim

Plaintiff raised a Fourteenth Amendment Claim based on the denial of life's necessities. (Doc. 98, p. 9.) Additionally, the court notes that there is a potential due process violation associated with the misconduct received following the filing of the PREA report. Both of the Fourteenth Amendment claims will be dismissed.

The Fourteenth Amendment provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" *See* U.S. Const. amend. XIV. A Fourteenth Amendment due process claim requires that a liberty interest be at stake:

> Procedural due process rights are [only] triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.E.2d 418 (1995). In determining whether a protected liberty interest exists, the court must

20

consider: (1) the duration of the disciplinary confinement; and (2) whether the conditions of confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement. *See id.* at 468, 115 S.Ct. 2293; *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000).

*Huertas v. Sec'y of Pa. Dep't of Corr.*, 533 F. App'x 64, 66 (3d Cir. 2013). Defendants argue that Plaintiff failed to specify what atypical and significant hardship he faced.  (Dc. 105, p. 25.)  Those he does allege, including deprivation of food and unsanitary conditions, are properly raised under the Eighth Amendment. *See supra*.  Therefore, the Fourteenth Amendment claim based on the denial of life's necessities will be dismissed.

However, liberally construing the complaint, the court notes that Plaintiff alleged he was issued a misconduct after filing his PREA complaint on September 29, 2022.  (Doc. 98, p. 10.)  Then, on November 1, 2022, Plaintiff was allegedly transferred to a different cell.  (*Id*., p. 7.)  To the extent Plaintiff is attempting to raise a Fourteenth Amendment due process claim based on this misconduct and transfer to a new cell, the court notes that Plaintiff has failed to allege that the transfer to the cell was a result of the misconduct.  Therefore, the claim will be dismissed.  Considering this is Plaintiff's third attempt at his complaint, the court deems further leave to amend would be futile, and the claims will be dismissed with prejudice.

### iv. State Tort Claims

Plaintiff brings intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, defamation, contributory negligence, imputed contributory negligence, torture, and pain and suffering claims. (Doc. 98, p. 9.)

Defendants claim sovereign immunity on the infliction of emotional distress, negligent infliction of emotional distress, negligence, and defamation claims. (Doc. 105, pp. 26–27.) The Commonwealth of Pennsylvania has explicitly retained its sovereign immunity and not waived it, except in ten carefully defined and limited circumstances: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highway and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. 42 Pa. C.S. § 8522(b). The only one of these exceptions potentially applicable to this case is that of sexual abuse associated with the PREA complaint. However, that exception exists only for "[c]onduct which constitutes an offense enumerated under [42 Pa. Cons. Stat. Ann. §] 5551(7)." 42 Pa. Cons. Stat. Ann. § 8522(b)(10). However, Section 5551(7) is limited to offenses in which "the victim was under 18 years of age at the time of the offense." *See* 42 Pa. Cons. Stat. Ann. § 5551(7). Here, Plaintiff does not assert

that he was under the age of 18 in September of 2022.  As such, the exemption

does not apply.  Accordingly, sovereign immunity applies, and the state tort claims

will be dismissed with prejudice.

Defendants argue that Plaintiff's contributory negligence claim is misapplied

to the facts raised in the second amended complaint.  (Doc. 105, p. 19.)

Pennsylvania state courts have set forth the following elements of contributory

elements:

> Contributory negligence is conduct on the part of a plaintiff which falls
> below the standard [of care] to which he should conform for his own
> protection and which is a legally contributing cause, cooperating with
> the negligence of the defendant, in bringing about the plaintiff's harm.
> Contributory fault may stem either from a plaintiff's careless exposure
> of himself to danger or from his failure to exercise reasonable diligence
> for his own protection.

*Angelo v. Diamontoni*, 871 A.2d 1276, 1280–81 (Pa. Super. 2005) (quoting

*Columbia Med. Group, Inc. v. Herring & Roll, P.C.,* 829 A.2d 1184, 1192 (Pa.

Super. 2003)).  Therefore, Plaintiff's claims of contributory negligence against

Defendants cannot survive and will be dismissed with prejudice.

Likewise, Plaintiff's torture claims are not actionable in this civil action: "18

U.S.C. §§ 2340 and 2340A . . . criminalize torture *outside* the United States; they

do not provide civil redress for torture *within* the United States."  *Renkel v. United

States*, 456 F.3d 640, 644–45 (6th Cir. 2006) (emphasis added).  The Act provides

for *criminal* penalties only; Congress has expressly declined to create a private

cause of action.  *See* 18 U.S.C. § 2340B ("Nothing in this chapter shall ... be

construed as creating any substantive or procedural right enforceable by law by

any party in any civil proceeding."); *see also Karim-Panahi v. 4000 Massachusetts*

*Apartments*, 302 F. Supp. 3d 330, 338 (D.D.C. 2018), *aff'd per curiam*, No.

187054, 2018 WL 6167393 (D.C. Cir. Jan. 24, 2019); *Brown v. Victor*, Civil No.

3:08-CV-01178, 2008 WL 11450547, at *1 (M.D. Pa. July 1, 2008). *See generally*

*Saleh v. Titan Corp.*, 580 F.3d 1, 13 n.9 (D.C. Cir. 2009) ("Congress has created an

extensive body of [criminal] law with respect to allegations of torture.  But

Congress has declined to create a civil tort cause of action that plaintiffs could

employ.").  Therefore, the torture claim will be dismissed with prejudice.

Turning to Plaintiff's final claim of pain and suffering, it, too, will be

dismissed.  Pain and suffering is generally assessed as damages and is not a stand-

alone claim.  *See Koestner v. Bennings*, No. 1:22-CV-1942, 2023 WL 8935054, at

*5 (M.D. Pa. Dec. 27, 2023).

### C. Plaintiff's Motion for Appointment of Counsel Will Be Denied.

On April 26, 2024, Plaintiff filed a motion for appointment of counsel.

(Doc. 119.)

Although prisoners have no constitutional or statutory right to appointment

of counsel in a civil case, the court has discretion to "request an attorney to

represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1); *see*

*Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019).  The appointment of counsel is

a privilege, not a statutory or constitutional right.  *Brightwell v. Lehman*, 637 F.3d

187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).

However, representation by counsel may be appropriate under certain

circumstances after a finding that the plaintiff's case has arguable merit in fact and

law.  *Tabron*, 6 F.3d at 155.  If the court finds that the plaintiff has crossed this

threshold inquiry, the court should consider the following factors in deciding

whether to request a lawyer to represent an indigent plaintiff:

> (1)   the plaintiff's ability to present his or her own case;
> (2)   the complexity of the legal issues;
> (3)   the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4)   the plaintiff's ability to retain counsel on his or her own behalf;
> (5)   the extent to which a case is likely to turn on credibility determinations, and;
> (6)   whether the case will require the testimony of expert witnesses.

*Tabron*, 6 F.3d at 155-57.  This list of factors is non-exhaustive, and no single

factor is determinative.  *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002)

(citing *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1997)).  Instead, these

factors serve as guideposts for the district courts to ensure that the precious

commodity of volunteer attorney time is not "wasted on frivolous cases."  (Id.)

While Plaintiff's Eighth Amendment conditions of confinement claim will

survive Defendants' Rule 12 motion, the court does not deem the appointment of

counsel appropriate at this time.  If future proceedings demonstrate the need for

counsel, the matter may be reconsidered either *sua sponte* or pursuant to a properly filed motion.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for default will be denied. Defendants' motion to partially dismiss the complaint is granted in part and denied in part. The First Amendment claims will be dismissed with prejudice. The Eighth Amendment failure to protect claim will be dismissed with prejudice. The conditions of confinement claim premised on threats will be dismissed with prejudice. The conditions of confinement claim premised un unsanitary conditions and refusal to feed Plaintiff will not be dismissed. The Fourteenth Amendment claims will be dismissed with prejudice. The state tort claims will be dismissed with prejudice with the exception that pain and suffering can be considered when assessing any potential damages, but it cannot stand alone as a claim. Plaintiff's motion for appointment of counsel will also be denied.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: June 10, 2024